# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

In re LANTUS DIRECT PURCHASER
ANTITRUST LITIGATION

Civil Action No. 16-cv-12652-LTS-JGD

## DEFENDANTS' OPPOSITION TO PURCHASERS' EMERGENCY MOTION FOR (1) LEAVE TO RESUME THE DEPOSITION OF STEPHANIE DONAHUE AND (2) *IN CAMERA* REVIEW OF REDACTED DOCUMENTS

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................. 1

II. BACKGROUND ................................................................................................. 2

    A.    Sanofi Produced Ms. Donahue's Notes Promptly upon Discovery ...................... 2

    B.    Sanofi Agreed to Make Ms. Donahue Available for Deposition on Her
           Notes and Offered Twelve Different Dates, but Plaintiffs Delayed ...................... 3

    C.    Plaintiffs Propose a Stipulation with a 48-Hour Fuse ............................................ 4

    D.    Plaintiffs Request Consent from Sanofi, but Unilaterally File Their Motion
           Just Two Hours Later ............................................................................................ 5

III. ARGUMENT .................................................................................................... 6

    A.    Allowing Plaintiffs to Reopen Ms. Donahue's Deposition for Three Hours
           to Address The Handwritten Notes Is the Only Appropriate Remedy Here .......... 6

    B.    Sanofi Is Allowed to Prepare Ms. Donahue to Testify Again .............................. 7

    C.    Plaintiffs' Request for *In Camera* Review Is Unnecessary and a Waste of
           the Court's Time and Resources ........................................................................ 11

    D.    Plaintiffs' Manufactured "Misrepresentations" Do Not Justify Plaintiffs'
           Additional Requested Relief ................................................................................ 14

IV. CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

CASES                                                                                                    PAGE

*Cannon v. Time Warner NY Cable LLC*,
   No. 13-CV-02521-RM-MJW, 2015 WL 2194620 (D. Colo. May 7, 2015).............................8

*Chassen v. Fid. Nat. Title Ins. Co.*,
   No. CIV. A. 09-291-ES, 2010 WL 5865977 (D.N.J. July 21, 2010)........................................9

*Chesbrough v. Life Care Centers of Am., Inc.*,
   No. WOCV201201339A, 2014 WL 861200 (Mass. Super. Ct. Feb. 14, 2014) ........7, 8, 10, 11

*Coyote Springs Inv., LLC v. Eighth Jud. Dist. Ct. of State ex rel. Cnty. of Clark*,
   131 Nev. 140, 347 P.3d 267 (2015) ........................................................................................8

*Cue, Inc. v. Gen. Motors LLC*,
   No. CV 13-12647-IT, 2015 WL 4750844 (D. Mass. Aug. 10, 2015)................................11, 13

*Ecker v. Wisconsin Cent. Ltd.*,
   No. 07-C-371, 2008 WL 1777222 (E.D. Wis. Apr. 16, 2008) .................................................8

*Few v. Yellowpages.com*,
   No. 13 CV. 4107 RA MHD, 2014 WL 3507366 (S.D.N.Y. July 14, 2014)............................8

*Gavrity v. City of New York*,
   No. 12-CV-6004 KAM VMS, 2014 WL 4678027 (E.D.N.Y. Sept. 19, 2014) ........................8

*Ginardi v. Frontier Gas Servs., LLC*,
   No. 4:11-CV-00420-BRW, 2012 WL 13028126 (E.D. Ark. Jan. 6, 2012) ..............................8

*Hall v. Clifton Precision, a Div. of Litton Sys., Inc.*,
   150 F.R.D. 525 (E.D. Pa. 1993).............................................................................................7

*Le v. Diligence, Inc.*,
   312 F.R.D. 245 (D. Mass. 2015).............................................................................................6

*McKinley Infuser, Inc. v. Zdeb*,
   200 F.R.D. 648 (D. Colo. 2001) .............................................................................................7

*Murray v. Nationwide Better Health*,
   No. 10-3262, 2012 WL 3683397 (C.D. Ill. Aug. 24, 2012) .....................................................8

*Odone v. Croda Int'l PLC.*,
    170 F.R.D. 66 (D.D.C. 1997) ................................................................................8, 9

*Pain Ctr. of SE Indiana, LLC v. Origin Healthcare Sols. LLC*,
    No. 1:13-CV-00133-RLY, 2015 WL 4548528 (S.D. Ind. July 28, 2015) ...............................7

*Phinney v. Paulshock*,
    181 F.R.D. 185 (D.N.H. 1998) ................................................................................9

*Pia v. Supernova Media, Inc.*,
    No. 2:09-CV-840 CW, 2011 WL 6069271 (D. Utah Dec. 6, 2011) .........................................8

*State ex rel. Means v. King*,
    205 W. Va. 708, 520 S.E.2d 875 (1999) ................................................................8

*Wai Feng Trading Co. Ltd v. Quick Fitting, Inc.*,
    No. CV 13-33S, 2016 WL 4184014 (D.R.I. June 14, 2016) .......................................6

## I. INTRODUCTION

Needless to say, the COVID-19 pandemic changed the way people work, lawyers litigate, and courts operate, forcing all to adapt to new—and rapidly changing—conditions after the world shut down in the spring of 2020. Despite the challenges of virtual litigation, the parties worked in good faith to conduct discovery without significant COVID-related delays, producing hundreds of thousands of documents electronically, and conducting depositions of nineteen party and third-party witnesses over platforms that did not exist when this litigation began.

During the virtual deposition of Stephanie Donahue (one of Sanofi's in-house patent lawyers) in February 2022, Ms. Donahue testified that she might have some handwritten notes at the office or in off-site storage. Between COVID closures and maternity leave, Ms. Donahue had not worked in the office since the spring of 2020. Once she returned to the office in the spring of 2022, Ms. Donahue located potentially responsive handwritten notes in her files and off-site storage. Sanofi US[1] produced redacted versions of the responsive notes to Plaintiffs two months ago, agreed to reopen Ms. Donahue's deposition for three hours, and identified a dozen dates between April 28 and June 17 when Ms. Donahue and her counsel would be available. Under the circumstances, and given the Parties' prior good-faith efforts to navigate the challenges of virtual litigation, Sanofi fully expected Plaintiffs would agree to schedule the continuation of Ms. Donahue's deposition without resorting to judicial intervention. Instead, over the last eight weeks Plaintiffs have issued a series of increasingly exorbitant demands based solely on their speculation about what Ms. Donahue's notes might mean, or what the text redacted from the notes might say.

---

[1] Sanofi-Aventis U.S. LLC ("Sanofi US") and Sanofi Aventis Puerto Rico, Inc. ("Sanofi PR") both join in this Opposition because Plaintiffs' motion does not differentiate between the two defendants. However, the documents at issue in this motion, which relate to Orange Book listings and patent infringement litigation, were produced by Sanofi US. Sanofi PR had no involvement in the Lantus Orange Book listings or patent infringement cases. *See* Decl. of John D. Conway in Support of Defendant Sanofi-Aventis Puerto Rico, Inc.'s Motion for Summary Judgment (Doc. No. 314) ¶¶ 8–9.

In their motion (filed less than two hours after asking for Sanofi's consent to do so), Plaintiffs have accused Sanofi and its counsel of making misrepresentations and engaging in unethical conduct. None of Plaintiffs' accusations is true, and none of their demands is supported by the facts or the law.

Sanofi agreed *two months ago* to reopen Ms. Donahue's deposition, and that is the only relief to which Plaintiffs are entitled.  The rest of their demands are wholly unjustified.  Plaintiffs' insistence that the Court bar Sanofi's counsel from preparing Ms. Donahue for her deposition is contrary to local practice, not to mention the law in the majority of districts across the United States.  So too, Plaintiffs have provided the Court with nothing beyond empty speculation to challenge Sanofi's redactions to Ms. Donahue's notes.  Indeed, Plaintiffs conspicuously omit any mention of the privilege log entries justifying those redactions, much less identify any deficiencies in them or inconsistencies with the Court's orders.

In the end, Plaintiffs' "emergency" motion is just another attempt to turn their own inattentiveness and delay into an unfair tactical advantage.  The Court should grant Plaintiffs leave to reopen Ms. Donahue's deposition for no more than three hours and for the sole purpose of examining her about the handwritten notes.  The Court should deny Plaintiffs' request for any other relief.

## II.  BACKGROUND

### A.     Sanofi Produced Ms. Donahue's Notes Promptly upon Discovery

Sanofi's recent identification and production of 37 pages of Ms. Donahue's hand-written notes resulted from an inadvertent oversight in the midst of a global pandemic.  Barely a month after the First Circuit remanded this case for discovery, the world—and Sanofi's offices—shut down due to COVID-19.  In the midst of navigating the early challenges of remote litigation, Sanofi "asked all of the current Sanofi employees from whom it collected documents in this

case"—including Ms. Donahue—for "the locations of their responsive . . . hard copy documents."

Ms. Donahue, who was working at home, did not recall any such documents at the time.[2]  In her

deposition nearly two years later, on February 16, 2022, Ms. Donahue recalled that she sometimes

took handwritten notes and might have some hard copy documents in the office or off-site storage.

And so Sanofi and Ms. Donahue—who had recently returned to working in the office after Sanofi

reopened its doors—began to search for those materials, ultimately identifying potentially relevant

notes in the office and off-site storage.[3]  Sanofi promptly collected and reviewed those documents,

and on April 11, 2022, produced the responsive notes, including all information within the scope

of Sanofi's privilege waiver as the Court construed it in its December 29, 2021 Order concerning

an earlier motion to compel.  (ECF No. 320.)

## B.   Sanofi Agreed to Make Ms. Donahue Available for Deposition on Her Notes and Offered Twelve Different Dates, but Plaintiffs Delayed

When Sanofi produced Ms. Donahue's notes on April 11, it acknowledged that Plaintiffs

would likely want to ask Ms. Donahue about them.  And so it agreed to re-open Ms. Donahue's

deposition and offered nine dates for that purpose.[4]  Plaintiffs waited two weeks to respond.[5]

Rather than accept one of the nine dates, Plaintiffs raised unfounded complaints regarding Sanofi's

redactions and asserted that they might need to reopen *nine* other depositions based solely on Ms.

Donahue's handwritten notes.[6]  Within a week, Sanofi addressed Plaintiffs' complaints.[7]  Sanofi

---

[2] Ex. 10, Letter from R. McCalips to A. Margolies (May 24, 2022), p. 4.

[3] *Id.*  In an apparent effort to detract from the obvious challenges that the COVID-19 pandemic presented to discovery efforts in this case and others, Plaintiffs make the patently false assertion that "Ms. Donahue was deposed from her office" and "in the background, the offices were visible open and occupied."  Mem. at 7 n.28.  As is obvious from the cover of her Deposition Transcript (Ex. 20), Ms. Donahue was deposed in Newark, New Jersey at the law offices of Walsh Pizzi O'Reilly Falanga, counsel for Sanofi in this case, not at Sanofi US's office in Bridgewater, New Jersey.  This is yet another example of Plaintiffs jumping to conclusions and failing to check the facts before casting aspersions at Sanofi and its counsel.

[4] Ex. A, Letter from R. McCalips to T. Scheetz (Apr. 11, 2022), p. 2 (identifying April 29, May 4-6, and the week of May 16 as potential dates to re-open Ms. Donahue's deposition).

[5] Ex. 28, Letter from A. Margolies to R. McCalips (Apr. 28, 2022).

[6] *Id.*

[7] Ex. 29, Letter from R. McCalips to A. Margolies (May 5, 2022).

re-reviewed and modestly adjusted some of its redactions in order to provide date information from surrounding notes for responsive notes that were undated.  Sanofi re-produced the notes and pressed Plaintiffs again for a date to reopen Ms. Donahue's deposition.[8]

Plaintiffs responded two weeks later on May 19, just a day before the last of the nine dates Sanofi originally proposed.[9]  Plaintiffs reiterated their complaints about redactions and reissued their demand for more depositions.  Plaintiffs also asked for three hours to take Ms. Donahue's deposition, but still did not accept a date.  Sanofi responded five days later, addressing Plaintiffs' purported concerns, agreeing to three hours of time, and offering three *additional* dates in June for Ms. Donahue's deposition.[10]  The next day, Plaintiffs stated that they would respond "as quickly as we can."[11]

Hearing nothing for two more weeks, Sanofi asked Plaintiffs on Friday, June 3, to confirm which of the two remaining dates for Ms. Donahue's deposition they would accept, and advised Plaintiffs that in the absence of a response, Sanofi would "assume" Plaintiffs no longer "intend[ed] to proceed with Ms. Donahue's deposition."[12]  Plaintiffs responded that they would "get back to [Sanofi] by Monday, but you should never so 'assume.'"[13]

## C.    Plaintiffs Propose a Stipulation with a 48-Hour Fuse

On Monday, June 6, at 6:05 p.m., Plaintiffs responded.  Instead of accepting a date for deposing Ms. Donahue about the handwritten notes, Plaintiffs proposed that Sanofi:

(1)    stipulate to the admissibility and Plaintiffs' *interpretation* of Ms. Donahue's notes;

---

[8] *Id.* at p. 2 ("Ms. Donahue remains available for deposition on May 16, 17, or 20.").
[9] Ex. 27, Letter from A. Margolies to R. McCalips (May 19, 2022).
[10] Ex. 10, Letter from R. McCalips to A. Margolies (May 24, 2022), p. 3 (offering June 6, 13, or 17).
[11] Ex. B, Email from K. LaSalle to R. McCalips (May 26, 2022, 2:40 PM).
[12] Ex. B, Email from R. McCalips to K. LaSalle (June 3, 2022, 12:52 PM).
[13] Ex. B, Email from K. Johnson to R. McCalips (June 3, 2022, 1:26 PM).

(2)    make Ms. Donahue and six other witnesses, including two of Sanofi's *Lilly* patent litigation counsel from Gibson Dunn, available in Plaintiffs' case in chief at trial or, at a minimum, for a trial deposition a month before trial; and

(3)    submit all of Ms. Donahue's notes to the Court for *in camera* inspection of Sanofi's privilege redactions—even though Plaintiffs had never challenged Sanofi's privilege log for those documents or raised any specific complaints regarding those redactions with Sanofi.[14]

If Sanofi did not agree within 48 hours, Plaintiffs threatened to "seek relief from the Court."[15]

Sanofi rejected Plaintiffs' proposal the next day.[16]  In response, Plaintiffs finally agreed to proceed with Ms. Donahue's deposition on June 17, the last offered date,[17] but asserted that Sanofi was not permitted to meet with or otherwise prepare Ms. Donahue for her deposition because Plaintiffs claimed to have held it open.  When Sanofi disagreed and asked Plaintiffs to provide authority in this Circuit supporting their position,[18] they declined to do so—undoubtedly because there is none.

## D.    Plaintiffs Request Consent from Sanofi, but Unilaterally File Their Motion Just Two Hours Later

Presumably to comply with the Court's meet and confer requirements, Plaintiffs asked Sanofi on Wednesday, June 8, for consent to a motion seeking three forms of relief:

- leave from the Court to reopen Ms. Donahue's deposition;

- an Order preventing Ms. Donahue from meeting with her counsel in advance of the deposition; and

- *in camera* review of the privilege redactions from Ms. Donahue's notes.[19]

Instead of waiting for Sanofi to respond (or even warning Sanofi that the clock was ticking), Plaintiffs filed their Emergency Motion two hours later.

---

[14] Ex. 30, Draft Stipulation from K. LaSalle to R. McCalips (June 6, 2022, 6:05 PM).
[15] *Id.*
[16] Ex. B, Email from R. McCalips to K. LaSalle (June 7, 2022, 12:07 PM).
[17] Ex. B, Email from K. LaSalle to R. McCalips (June 7, 2022, 1:24 PM).
[18] Ex. B, Email from K. LaSalle to R. McCalips (June 8, 2022, 4:09 PM).
[19] *Id.*

## III.  ARGUMENT

### A.   Allowing Plaintiffs to Reopen Ms. Donahue's Deposition for Three Hours to Address The Handwritten Notes Is the Only Appropriate Remedy Here

The one thing Plaintiffs get right in their motion is that reopening Ms. Donahue's deposition for three hours to address the handwritten notes (as Sanofi has agreed to do) is an appropriate—and arguably generous—remedy under the circumstances.  "[C]ourts have generally allowed re-opening a deposition where, as here, new information is unearthed only after the initial deposition."  *Le v. Diligence, Inc.*, 312 F.R.D. 245, 246 (D. Mass. 2015); *see also Wai Feng Trading Co. Ltd v. Quick Fitting, Inc.*, No. CV 13-33S, 2016 WL 4184014, at *4 (D.R.I. June 14, 2016) (finding that the late production of documents justifies a renewed deposition, although it should be limited to exploring the new documents).

Plaintiffs run off the rails, however, when they claim to have suffered any prejudice that would entitle them to more than additional deposition time—or that Sanofi has "tacitly admit[ted]" to any such prejudice by agreeing to reopen Ms. Donahue's deposition at all.[20]  Sanofi agreed to make Ms. Donahue available two months ago.  Sanofi offered Plaintiffs twelve dates between April and June when they could depose Ms. Donahue.  Until last week, when Plaintiffs finally accepted June 17, Sanofi's last proposed date, Plaintiffs had taken no action to even schedule the deposition.  The delay underlying Plaintiffs' "emergency" motion is solely of their own making.  While Sanofi agrees that a modest (3-hour) opportunity to question Ms. Donahue about the handwritten notes is appropriate, Plaintiffs are not entitled to anything more.[21]

---

[20] Mem. at 2.

[21] Plaintiffs' foot dragging in moving forward with Ms. Donahue's reopened deposition is all the more troubling because Plaintiffs also "reserve all rights" to seek to reopen four other depositions and notice two depositions of entirely new witnesses.  Mem. at 7–8 & n.31.

**B.      Sanofi Is Allowed to Prepare Ms. Donahue to Testify Again**

Plaintiffs are simply wrong to ask the Court to bar Ms. Donahue from consulting with counsel about the substance of the handwritten notes, or preparing to testify about them.  It is generally well-accepted that counsel may communicate with witnesses even after a deposition has commenced, so long as those communications do not involve coaching.  *See, e.g.*, *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 619–21 (D. Nev. 1998).  Indeed, in a case where (as here) there was a long gap between deposition sessions, the court held that "the truth finding function [of depositions] is adequately protected if deponents are prohibited from conferring with their counsel while a question is pending," concluding that "other consultations, during periodic deposition breaks, luncheon and overnight recesses, and more prolonged recesses ordinarily are appropriate."  *McKinley Infuser, Inc. v. Zdeb*, 200 F.R.D. 648, 650 (D. Colo. 2001) (emphasis added).

Plaintiffs' aggressive demand to the contrary reflects the overly harsh, minority approach adopted in *Hall v. Clifton Precision, a Div. of Litton Sys., Inc.*, 150 F.R.D. 525 (E.D. Pa. 1993).  There, a district court in Pennsylvania held that once a deposition commences, counsel and deponents may never confer except to decide whether to assert a privilege.  This approach has been heavily criticized by other courts, principally because it impedes counsel's ability to fulfill her ethical obligation to provide adequate representation.

The majority of courts, including at least one court in Massachusetts, have rejected *Hall*.[22] As a Massachusetts state court stated, "the greater weight and better reasoned authority that has

---

[22] *See Chesbrough v. Life Care Centers of Am., Inc.*, No. WOCV201201339A, 2014 WL 861200, at *8 (Mass. Super. Feb. 14, 2014) ("After due consideration of the issue, this Court shares the view that *Hall* is a bridge too far, imposing a rule of restriction that intrudes too deeply into the lawyer-client relationship and its vital privilege of confidentiality."); *In re Stratosphere*, 182 F.R.D. at 621 ("While this Court agrees with the *Hall* court's goals, it declines to adopt its strict requirements."); *McKinley*, 200 F.R.D. at 650 (rejecting the *Hall* approach and noting that "[t]he *Hall* case has met with substantial, and I believe justified, criticism"); *see also Pain Ctr. of SE Indiana, LLC v. Origin Healthcare Sols. LLC*, No. 1:13-CV-00133-RLY, 2015 WL 4548528, at *5 (S.D. Ind. July 28, 2015)

evolved in the area of lawyer-client conferences during depositions has come to reject *Hall* as an untenable and impractical interference with the attorney-client privilege and right to counsel." *Chesbrough v. Life Care Centers of Am., Inc.*, No. WOCV201201339A, 2014 WL 861200, at \*5 (Mass. Super. Ct. Feb. 14, 2014); *see also id.* at \*8 (holding "*Hall* is a bridge too far, imposing a rule of restriction that intrudes too deeply into the lawyer-client relationship and its vital privilege of confidentiality"). Rather, the prevailing rule throughout the country is that an attorney may confer with a deponent during a natural break so long as a question is not pending and the attorney does not coach the witness. *Id.* at \*6–7, 9 (listing cases that have "followed the lead of *Stratosphere* in rejecting *Hall* as a remedy worse than the disease").

None of the cases Plaintiffs cite supports the notion that this Court should follow *Hall* at all, let alone that it should be the first to adopt the *Hall* approach in this Circuit. To the contrary, in *Vnuk v. Berwick Hosp. Co.*, the district court acknowledged that while *Hall* still "is widely

---

("conferring with a deponent during a recess . . . does not interfere with the fact-finding purpose of a deposition"); *Cannon v. Time Warner NY Cable LLC*, No. 13-CV-02521-RM-MJW, 2015 WL 2194620, at \*1 (D. Colo. May 7, 2015) ("[T]here is no bar on attorney consultation with a client during the client's deposition, as a general matter − so long as no question is pending."); *Gavrity v. City of New York*, No. 12-CV-6004 KAM VMS, 2014 WL 4678027, at \*2 (E.D.N.Y. Sept. 19, 2014) ("The rules of this Court do not prohibit discussions between counsel and client during a deposition other than when a question is pending." (quotation omitted)); *Few v. Yellowpages.com*, No. 13 CV. 4107 RA MHD, 2014 WL 3507366, at \*1 (S.D.N.Y. July 14, 2014) (rejecting *Hall*'s approach as "[t]he rules of this court do not limit discussions between counsel and client during a deposition other than when a question is pending")*; Murray v. Nationwide Better Health*, No. 10-3262, 2012 WL 3683397, at \*5 (C.D. Ill. Aug. 24, 2012) (rejecting the approach in *Hall* "[i]n light of the reasoning of *Stratosphere* and *McKinley*"); *Ginardi v. Frontier Gas Servs., LLC*, No. 4:11-CV-00420-BRW, 2012 WL 13028126, at \*2 (E.D. Ark. Jan. 6, 2012) (finding an in-deposition break to find documents when no question was pending was not sanctionable because "the facts in *Hall* are different, and *Hall* fails to recognize the importance of the attorney-client privilege"); *Pia v. Supernova Media, Inc.*, No. 2:09-CV-840 CW, 2011 WL 6069271, at \*3 (D. Utah Dec. 6, 2011) (rejecting *Hall*'s approach in favor of *McKinley*'s); *Ecker v. Wisconsin Cent. Ltd.*, No. 07-C-371, 2008 WL 1777222, at \*3 (E.D. Wis. Apr. 16, 2008) (distinguishing *Hall* and instead relying on *Stratosphere* and *Odone*); *Odone v. Croda Int'l PLC.*, 170 F.R.D. 66, 68 (D.D.C. 1997) ("*Hall*, a case that is distinguishable on its facts to the instant action, is instructive, but this District has not adopted nor is it bound by the litany of deposition restrictions and prohibitions it outlines."); *Coyote Springs Inv., LLC v. Eighth Jud. Dist. Ct. of State ex rel. Cnty. of Clark*, 131 Nev. 140, 148, 347 P.3d 267, 273 (2015) ("We agree with the reasoning in *In re Stratosphere* that *Hall*'s discovery guidelines—which essentially preclude conversations between counsel and witness at any point between the start of depositions until trial when they involve an issue beyond whether to exercise a privilege—are unnecessarily restrictive."); *State ex rel. Means v. King*, 205 W. Va. 708, 715, 520 S.E.2d 875, 882 (1999) ("With regard to discovery depositions taken in the course of litigation, we believe that the approach taken in *Stratosphere* [rather than that taken in *Hall*] is the more logical and fair approach.").

accepted among the *Pennsylvania* district courts," it has been rejected more broadly. No. 3:14-CV-01432, 2016 WL 907714, at *3–4 (M.D. Pa. Mar. 2, 2016) (emphasis added).  Even then, the *Vnuk* court held that *Hall* was not necessary to condemn the misconduct challenged there—including whispering to the deponent, showing the deponent notes while a question was pending, and ending the deposition early.  *See id.*  Likewise, in *Chassen v. Fid. Nat. Title Ins. Co.*, No. CIV. A. 09-291-ES, 2010 WL 5865977, at *1 (D.N.J. July 21, 2010), another Third Circuit case, the court followed the *Hall* rule only because it had been adopted by New Jersey federal courts, and acknowledged that the *Hall* approach is "not universally followed in all jurisdictions."

In *Phinney v. Paulshock*, 181 F.R.D. 185, 195–96, 205–06 (D.N.H. 1998), a case on which Plaintiffs rely, a lawyer was accused of obstructing a deposition and coaching a witness he did not represent.  The dispute arose after the witness changed her testimony following a bathroom break. *Id.* at 195–96.  Both the witness and lawyer testified that the witness remembered something she did not recall before the break and told the lawyer, who advised her to share the information with the other side.  *Id.*  The court noted that this interaction "marginally implicat[ed]" a pretrial order "to refrain from coaching objections during depositions" because "*any* conversation between [the lawyer] and [witness] during the break could constitute coaching."  *Id.* at 205 n.47.  But the court did not reflexively apply the *Hall* approach because there was no proof that the lawyer suggested or told the witness what to say, *id.* at 205 n.47 (citing *Odone v. Croda Int'l PLC*, 170 F.R.D. 66, 68 (D.D.C. 1997)), and did not recognize the blanket rule Plaintiffs would have the Court adopt here.[23]

---

[23] In addition to communicating with the witness during the bathroom break, the lawyer "interrupted plaintiffs' questioning without [the] benefit of 'objecting' first at least twelve times," made at least eleven "speaking objection[s]," "cautioned the witness not to answer the question several times," "suggested an answer" several times, and made more than fifty "ill-founded" objections to the form of the question.  *Id.* at 206.

Nor do Plaintiffs have any grounds for invoking *Hall*'s overly restrictive, minority approach here. Plaintiffs attempt to portray Sanofi's actions in this case as "gamesmanship," and accuse Sanofi's counsel of lying and coaching Ms. Donahue (and other witnesses) to fabricate a certain "narrative."[24] These accusations are as false as they are offensive. And Plaintiffs' groundless speculation that witness coaching *could* occur is insufficient to intrude on the attorney-client relationship. Rather, to do so, examining counsel must have "a good faith basis to believe that inappropriate witness coaching on matters of substance has occurred," *Chesbrough*, 2014 WL 86120, at * 9, such as when "the timing of a requested break or a post-recess change in a witness's testimony suggest[s]" witness coaching. *Id.* at *8. And even then, the recourse is not a blanket prohibition on conferring with counsel or an order that the attorney-client privilege does not protect any communications. Rather, the examining counsel must first "make inquiry of the witness into the circumstances and subject matter" of the communication "and require that any claim of privilege interposed to justify a refusal to answer be set forth on the record." *Id.* at *9.

Sanofi's counsel has an ethical obligation to prepare Ms. Donahue for her deposition, and it must be allowed to do so. Courts "and the Federal Rules of Procedure seek to prevent [] coaching the witness by telling the witness what to say or how to answer a specific question." *In re Stratosphere*, 182 F.R.D. at 621. However, "[i]t is one thing to preclude attorney-coaching of witnesses. It is quite another to deny someone the right to counsel." *Id.* The break between Ms. Donahue's initial deposition in February and reopening it now does not change these fundamental rules. *In re Stratosphere*, 182 F.R.D. at 621 ("The right to prepare a witness is not different before the questions begin than it is during (or after, since a witness may be recalled for rebuttal, etc., during trial)."). Granting Plaintiffs' proposed remedy of barring all communication with or

---

[24] Mem. at 10, 12.

preparation of Ms. Donahue is based on wholly unfounded speculation about coaching and finds no support in the majority rule.  Indeed, "[t]aken to its logical extreme, the plaintiffs' argument would bar consultation between a party and his lawyer from the time of his deposition through trial, because there might be 'coaching' which would cause a party-witness to alter his testimony at trial." *McKinley Infuser*, 200 F.R.D. at 650.  As one court put it, "[t]hat result is absurd." *Id.* Plaintiffs' request that Ms. Donahue be prohibited from conferring with her counsel in preparation for her reopened deposition should be denied.

**C.     Plaintiffs' Request for *In Camera* Review Is Unnecessary and a Waste of the Court's Time and Resources**

Plaintiffs' demand that Sanofi submit the unredacted version of the handwritten notes to the Court for *in camera* review is no more warranted than their demand that the Court prohibit Sanofi from preparing Ms. Donahue for deposition.  As this Court has held, *in camera* review is appropriate where there is "reason to question the accuracy of defense counsel's privilege review or their commitment to act in good faith." *Cue, Inc. v. Gen. Motors LLC*, No. CV 13-12647-IT, 2015 WL 4750844, at *10 (D. Mass. Aug. 10, 2015).  Plaintiffs have provided no basis to question Sanofi as to either.

To support their demand, Plaintiffs first speculate about the information Sanofi redacted from Ms. Donahue's notes—such as the basis for its decisions to list certain patents in FDA's Orange Book.[25]  But their speculation is flatly contradicted by Sanofi's privilege log descriptions, which Plaintiffs entirely fail to address, much less contest.  Sanofi has included the six privilege log entries as Exhibit C hereto.  Each entry describes the information that was *actually* redacted from Ms. Donahue's notes, and belies Plaintiffs' self-serving speculation:

1.  Ex. 8 (SAMA04323341): ██████████████████████████████████████████
██████████████████████████████████████████████████████████████████████

---

[25] Mem. at 12–13.



2. Ex. 25 (SAMA04323342):

3. Ex. 9 (SAMA04323343):

4. Ex. 6 (SAMA04323344):

5. Ex. 3 (SAMA04323345):

6. Ex. 1 (SAMA04323317-330):

---

[26] *See, e.g.,* Ex. D, Plaintiffs' Deposition Exhibit PX-203 at 41

and 51

.

*See supra* nn. 24 & 25.



7. Ex. 7 (SAMA04323349-50):

8. Ex. 3 (SAMA04323347):

Having failed to challenge the accuracy of Sanofi's privilege log entries (or even mention them), Plaintiffs cannot rely on empty speculation to meet the high burden necessary to support a demand for *in camera* review.  *See Cue*, 2015 WL 4750844, at *10 (denying motion to compel submission of redacted documents for in camera review "[b]ecause there [wa]s no reason to second guess any of the information set forth in [the] privilege log").

Cue likewise forecloses any serious consideration of Plaintiffs' insinuations that *Sanofi* has engaged in bad faith—all of which are manufactured and contradicted by the actual record.  In *Cue*, the plaintiff asked the Court to conduct an *in camera* review to "uncover additional evidence"

---

[28] Mem. at 12 n.57.
[29] *See, e.g.*, Dep. Tr. of Stephanie Donahue 48:9-13 [REDACTED].

that may have been withheld on privilege grounds, citing only defense counsel's "inherent bias" as an advocate to justify the demand.  *Id.*  The Court rejected the request for lack of a basis to question the accuracy of the logged descriptions or counsel's commitment to act in good faith. From the very beginning of discovery more than two years ago Sanofi and its counsel have acted in good faith.  When this Court set down the privilege guidelines in its December Order, Sanofi fully complied.  And Sanofi followed those exact same guidelines when reviewing, redacting, and producing Ms. Donahue's notes.

Sanofi is confident that its redactions meet the standards this Court has enunciated throughout discovery.  While Plaintiffs have not met their burden for demanding *in camera* review of the challenged documents, and the Court need not undertake the burden of reviewing them as a result, Sanofi is nonetheless willing to provide the documents to the Court to show its continuing good faith and compliance with the Court's orders.

**D.     Plaintiffs' Manufactured "Misrepresentations" Do Not Justify Plaintiffs' Additional Requested Relief**

Remarkably, Plaintiffs assert that this case proceeded based on misrepresentations by Sanofi and Jones Day.  But these alleged "misrepresentations" are entirely manufactured and rest on unsupported speculation about what *might* be redacted from Ms. Donahue's notes.



*First,* ████████████████████████████████████████████████
████████████████████████████████████[30] ███████████████
████████████████████████████████████.[31]  And Sanofi

---

[30] Mem. at 4.
[31] *See, e.g.,* Sanofi US's response to Interrogatory No. 2 (Sept. 13, 2021) ████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

never said that it did not have any documents discussing FDA's organization of the Lantus Orange

Book listing. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████[32]██████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████[33]

*Second*, Plaintiffs once again revive their complaint regarding privileged communications

from litigation counsel regarding the Orange Book, which this Court already addressed in its

December 29, 2021 order on Plaintiffs' Motion to Compel (ECF No. 320).  Sanofi's position then

was—and is now—that "litigation-focused communications are fundamentally different from

communications with opinion counsel . . . even if they are related to the same topic."[34]  Though

Gibson Dunn was providing litigation advice regarding patents listed in the Orange Book, those

communications were "fundamentally different" from the advice of regulatory counsel and did not

fall within the scope of Sanofi's waiver.[35]  After hearing the Parties' arguments, the Court ordered

production of communications with Gibson Dunn "to the extent that such communications address

the propriety of listing or maintaining Sanofi's Lantus patents."[36]  But the Court otherwise denied

Plaintiffs' motion to compel communications with patent litigation counsel.  Sanofi faithfully

obeyed the Court's order, promptly producing any previously withheld communications with

---

██████ ██ ██ ████ █ ████ ██ █████ ███ █████ ████████
      *See, e.g.*, Ex. E, SAMA03583603 (███████████████████████████████████████████).
[33] Ex. 20, Dep. Tr. of Stephanie Donahue at 75:1-77:8 ████████████████████████████
███████████████████████████████████); Ex. F, Dep. Tr. of David Fox at 83;18-91:16
(████████████████████████████████████████████████████).
[34] Doc. No. 302 at 8.
[35] *Id.*
[36] Doc. No. 320 at 12.

Gibson Dunn about the propriety of Sanofi's Lantus Orange Book listings.[37]  And when Sanofi collected and reviewed Ms. Donahue's handwritten notes, it did not redact communications with Gibson Dunn regarding the same subject.[38]  But the Court affirmatively declined to order Sanofi to "produce any documents that pertain solely to advice it received regarding the litigation or litigation strategy.  Its production obligation is limited to advice regarding the propriety of Sanofi's Orange Book listings for Lantus patents."  ECF 320 at 12 n.3.  Indeed, at oral argument on the motion to compel, Plaintiffs' counsel stated that Plaintiffs "have no interest in litigation strategy with Gibson Dunn about issues other than the propriety of listing patents in the Orange Book."[39]

*Third*, Plaintiffs—from the beginning to end of their brief—suggest that Sanofi and Jones Day are "curating" a story through selective discovery and engaging in a pattern of misrepresentations.[40]  These serious and cynical allegations suggest that Sanofi and its counsel are ignoring their professional obligations and duty of candor.  Plaintiffs' mudslinging is baseless.  While it is disappointing, it is not altogether surprising, since Plaintiffs have no hope but to kick up some dust about Sanofi's Regulatory Compliance Defense as the parties prepare to litigate the issue on summary judgment.

Sanofi takes its discovery obligations seriously.  Despite the challenges of litigating during COVID-19 Sanofi has produced hundreds of thousands of documents and made tens of witnesses

---

[37] Sanofi explained this to Plaintiffs in its May 24 Letter, but, apparently, Plaintiffs ignored that explanation entirely and have never conferred with Sanofi regarding this topic. Ex. 10, Letter from R. McCalips to A. Margolies (May 24, 2022) (citing Letter from R. McCalips to T. Scheetz (Jan. 21, 2022)) ("These productions consist of communications between Sanofi US and its outside counsel in the Lilly litigation that are within the scope of the Court's December 29, 2021 Order . . . ."); *see, e.g.*, SAMA04288004 (████████████████████████████████████████████████████████████████████████████); SAMA04287814 ████████████████████████████████████████████████████████████████████ .

[38] *See, e.g.*, Ex. 8, SAMA04323341.

[39] Dec. 21, 2021 Hr'g Tr. 37:14-17.

[40] Mem. at 1 ("Stephanie Donahue's hand-written notes that appear to undercut Sanofi's selectively curated story, contradict witness testimony, and belie counsel's representations."); *id.* at 10 ("Sanofi has already once forced the purchasers to take depositions with a curated, rather than complete record; it should not now be allowed to compound that prejudice by crafting a desired narrative behind the scenes.").

available for deposition.  Sanofi did not "curate" or "select" the contents of those documents or the substance of the witnesses' testimony.  They speak for themselves.

## IV.  CONCLUSION

For the foregoing reasons, Sanofi respectfully requests that the Court enter an order allowing Plaintiffs to reopen Ms. Donahue's deposition for three hours for the limited purpose of addressing her handwritten notes, but denying all of Plaintiffs' other requested relief.

Dated: June 13, 2022                    Respectfully submitted,

                                        */s/ Rosanna K. McCalips*
                                        Rosanna K. McCalips (*pro hac vice*)
                                        Julie E. McEvoy (*pro hac vice*)
                                        Theresa C. Martin (*pro hac vice*)
                                        **JONES DAY**
                                        51 Louisiana Avenue, N.W.
                                        Washington, D.C. 20001-2113
                                        Tel: (202) 879-3939
                                        Fax: (202) 626-1700
                                        jmcevoy@jonesday.com
                                        rkmccalips@jonesday.com
                                        tcoughlin@jonesday.com

                                        Michelle K. Fischer (*pro hac vice*)
                                        Brian K. Grube (*pro hac vice*)
                                        **JONES DAY**
                                        North Point
                                        901 Lakeside Avenue
                                        Cleveland, OH 44114-1190
                                        Telephone (216) 586-3939
                                        Facsimile: (216) 579-0212
                                        mfischer@jonesday.com
                                        bkgrube@jonesday.com

                                        Stephen D. Morrison, III (*pro hac vice*)
                                        **JONES DAY**
                                        90 South 7th Street, Suite 4950
                                        Minneapolis, MN 55402
                                        Telephone: (612) 217-8913
                                        Facsimile: (844) 345-3178
                                        smorrison@jonesday.com

                                        Kate Wallace (BBO #665503)
                                        **JONES DAY**
                                        100 High Street, 21st Floor
                                        Boston, Massachusetts 02110
                                        Tel: (617) 960-3939
                                        Fax: (617) 449-6999
                                        kwallace@jonesday.com

                                        *Counsel for Defendants Sanofi-Aventis U.S.*
                                        *LLC and Sanofi-Aventis Puerto Rico, Inc.*

## CERTIFICATE OF SERVICE

     I, Rosanna K. McCalips, hereby certify that a true copy of the foregoing document filed through the ECF system will be electronically sent to the registered participants as identified on the Notice of Electronic Filing on June 13, 2022.

                                      */s/ Rosanna K. McCalips*
                                       Rosanna K. McCalips