**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE LANTUS DIRECT PURCHASER ANTITRUST LITIGATION | No. 1:16-cv-12652-JGD-LTS |

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

III. ARGUMENT .......... 2

A. This motion is timely. .......... 3

B. The proposed intervenors seek to bring claims that challenge the conduct at the heart of this case. .......... 4

C. The existing parties would be benefitted, not prejudiced, by allowing intervention. .......... 5

D. Allowing intervention protects statute-of-limitations tolling under *American Pipe*. .......... 6

E. Proposed Intervenors are seeking to assert the same causes of action, will seek only the discovery made necessary or appropriate by the defendant's requests, and agree to be bound by the list of prior orders of this Court below. .......... 7

IV. CONCLUSION .......... 8

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974) .......... 4, 6, 7

*Balmes v. Illinois Bell Tel. Co.*,
No. 15-cv-2685, 2016 WL 1019764 (N.D. Ill. Mar. 15, 2016) .......... 6

*In re Celexa & Lexapro Marketing & Sales Practices Litig.*,
915 F.3d 1 (1st Cir. 2019) .......... 6

*In re Cmty. Bank of N. Va.*,
418 F.3d 277 (3d Cir. 2005) .......... 4

*Crown, Cork & Seal Co. v. Parker*,
462 U.S. 345 (1983) .......... 6

*In re Elscint, Ltd. Sec. Litig.*,
674 F. Supp. 374 (D. Mass. 1987) .......... 6

*Fantroy v. First Fin. Bank, N.A.*,
No. 12-cv-82, 2012 WL 12884863 (N.D. Tex. Oct. 26, 2012) .......... 4

*Nadist, LLC v. Doe Run Res. Corp.*,
No. 06-cv-969 CDP, 2009 WL 3680533 (E.D. Mo. Oct. 30, 2009) .......... 3

*Smithson v. Union Pac. R.R. Co.*,
No. 21-cv-01225, 2022 WL 1506288 (W.D. Tex. May 11, 2022) .......... 6

*T-Mobile Ne. LLC v. Town of Barnstable*,
969 F.3d 33 (1st Cir. 2020) .......... 3

## Other Authorities

Fed. R. Civ. P. 24 .......... 1, 3, 5

## I. INTRODUCTION

Until recently, this case proceeded as a putative class action. But discovery-revealed peculiarities in the economic model that rendered class treatment inappropriate in the view of class counsel.[1] This Court has granted the putative class members leave to move to join this action through intervention or otherwise. Direct purchasers Rochester Drug Co-Operative (RDC),[2] Miami-Luken,[3] Burlington Drug Company, Inc., Dakota Drug, Inc., J M Smith Corporation d/b/a Smith Drug Company, North Carolina Mutual Wholesale Drug Company, Prescription Supply, Inc., Value Drug Company, AmerisourceBergen,[4] Cardinal Health,[5] and McKesson Corporation ("proposed intervenors") thus seek permission to intervene in this matter pursuant to Fed. R. Civ. P. 24(b).

Amerisource Bergen, Cardinal Health, and McKesson are the three largest drug wholesalers in the country: as purchase data produced by Sanofi itself shows, these three entities represent the vast majority of the purchases at issue in this case. Given that this case is no longer proceeding as a class action, they (along with RDC and MLI) now seek to vindicate their own claims and—out of the respect for the hard work done by this Court to date and the efficiencies gained by a joint proceeding—to do so by intervening in this matter as plaintiffs. This Court should grant their motion. Current direct purchaser plaintiffs are also simultaneously moving the Court to amend the Complaint to add proposed intervenors as parties to this litigation.

---

[1] *See* Mem. In Support of Motion for the Entry of an Order Setting Joinder Date 1 (Oct. 10, 2022), ECF No. 428 ("Joinder Date Motion").

[2] RDC Liquidating Trust by and through its trustee, Advisory Trust Group LLC.

[3] MLI RX Inc.

[4] AmerisourceBergen Corporation; AmerisourceBergen Drug Corporation; H.D. Smith, LLC; Valley Wholesale Drug Company, LLC; Smith Medical Partners, LLC; ASD Specialty Healthcare, Inc.; Bergen Brunswig Corporation; JM Blanco; and Oncology Supply.

[5] Cardinal Health, Inc. and The Harvard Drug Group, LLC.

## II. BACKGROUND

On December 31, 2016, FWK Holdings, LLC filed the first *Lantus* antitrust complaint in this Court.[6] On June 25, 2021, Meijer, Inc. and Meijer Distribution Inc. joined the case (together with FWK Holdings the "direct purchaser plaintiffs").[7] The direct purchaser plaintiffs alleged antitrust violations stemming from Sanofi's improper Orange Book listings, which enabled Sanofi to delay competition for its blockbuster insulin products, Lantus and Lantus SoloStar.

Initially, this case proceeded as a putative class action; however, given the decision on summary judgment motions relating to Puerto Rican purchasers, unique attributes of the market for insulin glargine products, and other facts ultimately revealed in discovery, class treatment was not warranted.[8] Thus, on October 10, 2022, class counsel moved for an order setting a date by which any putative class members who wished to join the action should announce their intentions.[9] On December 2, 2022, this Court granted that motion and set a deadline of January 2, 2023 by which any "unnamed members of the putative class . . . that wish to be coordinated for trial with the currently-named direct purchaser plaintiffs" must "assert their claims by way of new complaint under Rule 3, by way of the Named Direct Purchasers moving to add and join new parties under Rules 15 and 20, by way of a motion to intervene under Rule 24, or otherwise."[10] This motion to intervene follows the Court's directive.

## III. ARGUMENT

As amended in 1966, modern Rule 24 governing intervention was crafted to

---

[6] *See* Class Action Compl. (Dec. 31, 2016), ECF No. 1.

[7] *See* 3d Am. Class Action Compl. (June 25, 2021), ECF No. 244.

[8] *See* Joinder Date Motion 1.

[9] *Id.*

[10] Case Management Order ¶ 1 (Dec. 2, 2022), ECF No. 439.

complement modern Rule 23 governing class actions. Rule 24 drew expressly "upon the revision" of Rule 23 at that time "and the reasoning underlying that revision."[11] The drafters had in mind circumstances where the ability of a case to proceed as a class action "comes into question."[12] Those are precisely the circumstances here that warrant allowing the proposed intervenors, each former putative class members, to intervene.

"On timely motion," this Court "may permit anyone to intervene" who "has a claim or defense that shares with the main action a common question of law or fact."[13]

In the First Circuit, when deciding whether to permit parties to intervene under Rule 24(b), courts may consider "almost any factor rationally relevant."[14] Typically, district courts focus on timeliness, commonality, and a balancing of prejudice to the parties.[15] Here, the proposed intervenors' motion is timely, they seek to bring common claims to those already in this litigation, and the proposed intervenors can be integrated into this litigation with virtually no delay to the existing parties. This Court should permit them to intervene and vindicate their claims as a part of this litigation.

**A. This motion is timely.**

The proposed intervenors' motion is timely. Here, the Court entered an order requiring new plaintiffs who wish to join the litigation to make their intentions known; this motion is filed in accordance with that order. Because a submission is timely if it is "filed in accordance with the governing case management orders" setting a "presumptive deadline,"[16] there is no

[11] Fed. R. Civ. P. 24 advisory committee's note to the 1966 amendment.

[12] *Id.*

[13] Fed. R. Civ. P. 24(b)(1)(B).

[14] *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 40–41 (1st Cir. 2020) (quoting *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 111 (1st Cir. 1999)).

[15] Fed. R. Civ. P. 24(b)(1)(B), (3).

[16] *Nadist, LLC v. Doe Run Res. Corp.*, No. 06-cv-969 CDP, 2009 WL 3680533, at *1 (E.D. Mo. Oct. 30, 2009);

basis to treat this motion as untimely.

Also, intervention was necessitated by the determination by class counsel that this case should not continue to proceed as a class action.[17] That determination could not be made until after further discovery was conducted into the attributes of the market for insulin glargine and the Court's summary judgment rulings on Puerto Rican purchasers, and thus, the total size of the putative class could be known. Until then, proposed intervenors' claims were litigated as part of the putative direct purchaser class action, and proposed intervenors had no need to appear in this Court to enforce their rights. In fact, courts discourage class member "motions to intervene in the suit" while class allegations are pending, since multiple filings by individual plaintiffs "would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure."[18] Proposed intervenors had no reason to intervene until, at the earliest, the deadline for the then-class representatives to move for class certification lapsed.

### B. The proposed intervenors seek to bring claims that challenge the conduct at the heart of this case.

The proposed intervenors challenge the exact same misconduct alleged by the former direct purchaser putative class, of which they were members. Specifically, they seek to bring claims that Sanofi US improperly listed device patents in the Orange Book, then leveraged those listings to delay competition in the market for insulin glargine to trigger an automatic

---

*see also Fantroy v. First Fin. Bank, N.A.*, No. 12-cv-82, 2012 WL 12884863, at *2 (N.D. Tex. Oct. 26, 2012) ("Plaintiff filed his motion for leave [to amend] before the April 3, 2012 deadline set in the scheduling order, and it is therefore presumed timely.").

[17] *See* Joinder Date Motion 1.

[18] *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974); see also *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 315 (3d Cir. 2005) ("The goals of Rule 23 would be seriously hampered if [a profusion of intervention motions by class members] were permitted").

two-and-a-half year delay in approving less-expensive competitors.[19] They intend to allege the same causes of action and claim the same form of damages as the existing direct purchaser plaintiffs: overcharges on their direct purchases of Lantus and its follow-on competitors. The only substantive changes, when compared to the currently operative complaint, are the absence of class allegations and inclusion of the intervenors as parties.[20] No new facts or claims are alleged.

### C. The existing parties would be benefitted, not prejudiced, by allowing intervention.

Intervention will not "unduly delay or prejudice the adjudication of the original parties' rights."[21] The Court has yet to set a trial schedule; only minimal discovery, if any, would be needed to assimilate the proposed intervenors' claims into the case;[22] and the direct purchaser plaintiffs have already proposed (and the Court has accepted) a mechanism by which a streamlined schedule will be set following this motion. Conversely, disallowing the proposed intervenors' motion will prejudice their rights to try their claims effectively and efficiently: if the proposed intervenors need to assert their claims in a separate case or cases, they (and Sanofi) will be saddled with the burden and cost of additional discovery, and face greater delay as a new case starts from potentially jump street.

The alternative to intervention in this case is inherently inefficient, potentially creating

[19] The proposed intervenors also allege that Sanofi U.S. owned or controlled its Puerto Rican counterpart, Sanofi P.R., such that Sanofi U.S. is liable for any Puerto-Rican sales of Lantus.

[20] The direct purchaser plaintiffs also made a few non-substantive tweaks, including correcting typos, removing/replacing the word "sham," and formally removing Sanofi P.R. as a defendant (in conjunction with the Court's summary judgment order).

[21] Fed. R. Civ. P. 24(b)(3).

[22] Data already produced by Sanofi and non-parties establishes the new plaintiffs' standing and the size of their purchases. Accordingly, the plaintiffs do not anticipate that much, if any discovery will be needed from the new parties. Sanofi has not identified any: if it does, the plaintiffs agree to meet and confer in good faith about the appropriate scope of discovery (including whether any of Sanofi's requests for discovery of the new plaintiffs warrant additional discovery from Sanofi or non-parties).

a quagmire of piecemeal litigation across the country. Not only that, denying intervention may lead to delays in this case: any case filed elsewhere will likely face motions to transfer and/or an MDL petition. If even one such case is transferred to this district, it will not be until this case is much closer to trial. This Court would then have to grapple with how to coordinate the actions, and allow significant time for the transferred case to "catch up" to the hard work done and progress made by the parties and the Court in this case. The resulting delay could be lengthy.

### D. Allowing intervention protects statute-of-limitations tolling under *American Pipe.*

Intervention preserves the parties' rights to litigate in their own name. In *American Pipe & Construction v. Utah*, and cases that follow, the Supreme Court held "the commencement of a class action suspends the applicable statute of limitations as to all members of the class."[23] Binding precedent holds that "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied"[24] or the class allegations are voluntarily dismissed.[25] This is precisely the situation here. Intervention preserves the proposed intervenors' rights under *American Pipe*. Denying intervention "would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach

[23] 414 U.S. at 554; *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353 (1983).

[24] *American Pipe*, 414 U.S. at 554.

[25] In *In re Celexa & Lexapro Marketing & Sales Practices Litigation*, the First Circuit affirmed a ruling by Judge Gorton of this District that a RICO class action tolled the statute of limitations under *American Pipe* during its pendency, where, as here, the plaintiff voluntarily dismissed before class certification proceedings began. 915 F.3d 1, 16 (1st Cir. 2019) (citing 65 F. Supp. 3d 283, 291 (D. Mass. 2014)). *See also, e.g., In re Elscint, Ltd. Sec. Litig.*, 674 F. Supp. 374, 377 (D. Mass. 1987) ("[T]he benefits of the *American Pipe* tolling rule extend to putative class members who seek to intervene before the motion for class certification is decided as well as after."); *Balmes v. Illinois Bell Tel. Co.*, No. 15-cv-2685, 2016 WL 1019764, at *6 (N.D. Ill. Mar. 15, 2016) ("when the Blakes plaintiffs voluntarily withdrew their class claims . . . Illinois Bell concede[d] that the limitations periods for Balmes's IMWL claims based on those allegations were tolled under *American Pipe* during that time"); *Smithson v. Union Pac. R.R. Co.*, No. 21-cv-01225, 2022 WL 1506288, at *4 (W.D. Tex. May 11, 2022) ("[T]he Court concludes that American Pipe tolling ceased as to Smithson's disparate impact claim when the Harris Plaintiffs voluntarily abandoned their class-wide disparate-impact claim in their motion for class certification.").

them until after the running of the limitation period would be to file earlier individual motions to join or intervene as parties—precisely the multiplicity of activity which Rule 23 was designed to avoid in those cases . . . ."[26]

### E. Proposed Intervenors are seeking to assert the same causes of action, will seek only the discovery made necessary or appropriate by the defendant's requests, and agree to be bound by the list of prior orders of this Court below.

The Court's Case Management Order Setting Joinder Date, ECF No. 439, provides:

> [a]ny Joinder Filings must address whether the plaintiff(s) (a) agree to be bound by prior orders, decisions, and stipulations in this litigation, (b) will seek additional discovery of the defendants or non-parties, and (c) intend to bring any additional claims other than those currently part of this litigation or intend to assert additional bases for the claims currently part of this litigation.

Proposed intervenors will agree to be bound by prior orders, decisions, and stipulations in this litigation enumerated in Appendix A, and agree to meet and confer with the defendant about whether others should be added. Proposed intervenors' acceptance of these orders, further underscores the lack of any prejudice to the defendant and ensures the Court will not have to duplicate any efforts already undertaken.

Under the assumption that the defendant would only appropriately be entitled to minimal additional discovery from the joinder plaintiffs sufficient to substantiate its claims, proposed intervenors do not anticipating seeking much, if any, additional discovery of the defendant or non-parties. Of course, if the defendant intends to conduct substantial discovery—whether of proposed intervenors or anyone else—it may be necessary and/or otherwise appropriate for the plaintiffs to do the same. All parties should, of course, meet and confer about the appropriate scope of discovery.

Most importantly, proposed intervenors do not intend to bring any additional causes of

[26] *Am. Pipe*, 414 U.S. at 551.

action other than those currently part of this litigation, nor assert any meaningfully different bases for those claims.

## IV. CONCLUSION

For the foregoing reasons, the proposed intervenors respectfully request that this Court grant the motion and permit joinder plaintiffs to intervene in this case.

Dated: January 3, 2022

Respectfully submitted,

***/s/ Kristen A. Johnson***

Thomas M. Sobol (BBO #471770)
Kristen A. Johnson (BBO #667261)
Bradley J. Vettraino (BBO #691834)
HAGENS BERMAN SOBOL SHAPIRO LLP
One Faneuil Hall Square, 5th Floor
Boston, MA 02109
Telephone: 617-482-3700
Facsimile: 617-482-3003
tom@hbsslaw.com
kristenj@hbsslaw.com
bradleyv@hbsslaw.com

*Counsel for Direct Purchaser Plaintiffs FWK Holdings, LLC, Meijer, Inc., and Meijer Distribution, Inc.; and for proposed intervenors AmerisourceBergen Corporation; AmerisourceBergen Drug Corporation; H.D. Smith, LLC; Valley Wholesale Drug Company, LLC; Smith Medical Partners, LLC; ASD Specialty Healthcare, Inc.; Bergen Brunswig Corporation; JM Blanco; Oncology Supply; Cardinal Health, Inc.; The Harvard Drug Group, L.L.C.; and McKesson Corporation.*

John D. Radice (*pro hac vice*)
Clark Craddock (*pro hac vice*)
April D. Lambert (*pro hac vice*)
Kenneth Pickle (*pro hac vice*)
RADICE LAW FIRM, P.C.
475 Wall Street
Princeton, NJ 08540
Telephone: 646-245-8502
Facsimile: 609-385-0745

jradice@radicelawfirm.com
ccraddock@radicelawfirm.com
alambert@radicelawfirm.com
kpickle@radicelawfirm.com

Joseph M. Vanek (BBO #551083)
David P. Germaine (*pro hac vice*)
John P. Bjork (*pro hac vice*)
Alberto Rodriguez (*pro hac vice*)
Greg Shinall (*pro hac vice*)
Trevor K. Scheetz (*pro hac vice*)
Allison G. Margolies (*pro hac vice*)
SPERLING & SLATER, P.C.
55 W. Monroe, Suite 3200
Chicago, IL 60603
Telephone: 312-641-3200
Facsimile: 312-641-6492
jvanek@sperling-law.com
dgermaine@sperling-law.com
jbjork@sperling-law.com
arodriguez@sperling-law.com
shinall@sperling-law.com
tscheetz@sperling-law.com
amargolies@sperling-law.com

*Counsel for Direct Purchaser Plaintiffs FWK Holdings, LLC., Meijer, Inc., and Meijer Distribution, Inc.*

***/s/ Bruce E. Gerstein***

Bruce E. Gerstein (*pro hac vice* forthcoming)
Kimberly Hennings (*pro hac vice* forthcoming)
Garwin Gerstein & Fisher LLP
88 Pine St., 10th Floor
New York, NY 10005
Telephone: (212) 395-0055
bgerstein@garwingerstein.com
khennings@garwingerstein.com

Susan Segura (*pro hac vice* forthcoming)
David Raphael (*pro hac vice* forthcoming)
Smith Segura Raphael & Leger LLP
221 Ansley Blvd.
Alexandria, LA
Telephone: (318) 445-4480
ssegura@ssrllp.com
draphael@ssrllp.com

Stuart E. Des Roches (*pro hac vice* forthcoming)
Odom & Des Roches LLC
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Telephone: (504) 522-0077
stuart@odrlaw.com

Russell A. Chorush
Heim, Payne & Chorush, L.L.P.
1111 Bagby, Suite 2100
Houston, TX 77002
(713) 221-2004
rchorush@hpcllp.com

*Counsel for Burlington Drug Company, Inc.; Dakota Drug, Inc.; J M Smith Corporation d/b/a Smith Drug Company; North Carolina Mutual Wholesale Drug Company; Prescription Supply, Inc.; and Value Drug Company.*

***/s/ Peter R. Kohn***

Peter R. Kohn (*pro hac vice* forthcoming)
Joseph T. Lukens (*pro hac vice* forthcoming)
Faruqi & Faruqi, LLP
One Penn Center, Suite 1550
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
pkohn@faruqilaw.com
jlukens@faruqilaw.com

Bradley J. Demuth (*pro hac vice* forthcoming)
Faruqi & Faruqi, LLP
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
bdemuth@faruqilaw.com

*Counsel for Plaintiffs RDC Liquidating Trust by and through its trustee, Advisory Trust Group LLC; MLI RX LLC.*

**CERTIFICATE OF SERVICE**

I, Kristen A. Johnson, certify that, on this date, the foregoing document was filed electronically via the Court's CM/ECF system, which will send notice of the filing to all counsel of record, and parties may access the filing through the Court's system.

Dated: January 3, 2023

*/s/ Kristen A. Johnson*
Kristen A. Johnson (BBO #667261)